# The United States *vs.* Thomas Dickey.

## *Certiorari to Jefferson.*

An indictment will not lie at common law, nor under the act of Congress of 1825, against a person for the crime of perjury, for swearing or affirming falsely, to the schedule attached to a petition for a certificate of bankruptcy, under the provisions of the bankrupt act of 1841.

The substance of the statutory definition of an offence, must be contained in an indictment, and that by no remote or doubtful inference.

The bankrupt law of 1841, as to the penalties for its violation, is complete within itself.

The petitioner, for a fraudulent concealment of his property, &c., and exhibiting a false schedule, is not liable to be indicted for perjury, unless he subsequently swear falsely to interogatories specially propounded. The consequence of a false statement in the first instance, is the loss of a certificate of bankruptcy, and in the second, the petitioner incurs the penalties attached to the crime of perjury.

The case is explicitly set forth in the opinion of the court.

W. G. WOODWARD, for the United States.

SHUFFLETON & GRAY, for the defendant.

PER CURIAM, MASON, CHIEF JUSTICE.—The following indictment was found against the defendant in this case, by the grand jury of Jefferson county :

" United States of America, Iowa Territory, Jefferson county, September term of the District Court, of 1st Judicial District, for said county 1843.

" The grand jurors for the United States, duly empannelled and sworn to inquire in and for the county of Jefferson at a District Court of the United States, begun and held in said county at the court house in Fairfield, on Monday the 11th day of September, 1843, on their oaths present,

" That Thomas Dickey, at the county aforesaid, on or about the 9th day of May, 1842, filed his petition in bankruptcy, in and before said court, sitting as a District Court of the United States, for the 1st Judicial District, in and for said county of Jefferson, praying to be declared a bankrupt under the bankrupt act of the Unitied States, approved August 19th, 1841, and dealt with accordingly; to which said petition a schedule was annexed as a part thereof, purporting to set forth to the best of his knowledge and belief of the said Dickey, as list of his creditors, their respective places of residence and the amount due by the said Dickey to each of them together with a (pretended) accurate inventory of the property, rights and credits of the said Dickey of every name, kind and description, and the location and situation of each and every parcel and portion thereof he (the said Dickey's wearing apparel and that of his wife and children excepted, which said petition and schedule being produced before John A. Pitzer, a commissioner in bankruptcy, duly appointed by said court, and authorized to administer oaths, he the said Dickey did then and there falsely, wickedly, wilfully corruptly depose and say, being duly sworn, that the said petition was true, and the said schedule was accurate according to the best of his knowledge and belief; which said oath was then and there reduced to writing, and was then and there subscribed by said Thomas Dickey, before the said John A. Pitzer, commissioner as aforesaid: who attested the same as clerk of the District Court aforesaid, and as commissioner as aforesaid.

And the jurors aforesaid, on their oaths aforesaid do say, that the said petition is not true, and that the schedule is not accurate, in the following particulars; to-wit: The said Dickey did not include, and has not included, but wilfully and corruptly refused to include in the inventory of his property, rights and credits annexed to his schedule as a part of his petition, a debt to him, said Dickey, from Willis Stone, amounting to near the sum of ten dollars, and said Dickey has not included in his said inventory a debt to him, said Dickey, from Gilbert M. Fox, amounting to near the sum of fifteen dollars; and the said Dickey has not included in his said invenory a debt to him from Alfred

Colvin amounting to near the sum of five dollars; and the said Dickey has not included in his said inventory a debt to him said Dickey, from Job Clinkenbeard and Thomas Standiford, to the amount of near sixty-five dollars; and the said Dickey has not included in his said inventory, a debt to him said Dickey, from Stephen Cooper, of near ten dollars; and the said Dickey has not included in his said inventory, a debt to him said Dickey, from Jos. B. Teas of near twenty dollars; and the said Dickey has not included in his said inventory, a debt to him said Dickey, from James D. Buchanan and George W. Teas, amounting to near thirty-five dollars, (the same being due at the time of filing his said petition and schedule.)

"And so the jurors aforesaid, on their oaths aforesaid do say, that the said Thomas Dickey has not set forth in said schedule, annexed to his said petion, to the best of his knowledge a true list of his creditors, their places of residence and the amount due by said Dickey to each of them, and an accurate inventory of his proprety, rigths and credits of ever name, kind and description and the location and description of each and every parcel thereof, his wearing apearel and that of his wife and children excepted; but the said schedule is inaccurate and false, to the knowledge of said Dickey. And the jurors do say that the said Dickey, in manner and form aforesaid, has committed wilful and corrupt *perjury;* and did falsely and corruptly swear, in said proceeding, before said commissioner. Against the peace and dignity of the United States, and contrary to the statute in such case made and provided.

                    "L. D. STOCKTON, Dis't. Att'y. P. T."

To this indictment there was a demurrer, and that demurrer was sustained by the court wihch is the only alleged error in this case.

It is not contended by the plaintiff's counsel that the offence here set forth is made indictable by the bankrupt act itself, but it is alleged to be indictable at common law, or at least that it is made so by the act of Congress of 1825. That statute, among other things, declares " that if any person in any case, matter, hearing or other proceeding, where an oath or affirmation shall be required to be taken or administered under or by any law or laws of the United States, shall, upon taking such oath or affirmation, *knowingly and willingly* swear or affirm falsely, he shall be deemed guilty of perjury."

Admitting the present case to come within the reach of the statute just quoted, it is very questionable whether the offence is sufficiently charged in the indictment. The act of 1825 only applies to cases where

the accused shall have *knowingly and willingly* sworn falsely. The indictment in the present case does not contain that charge in express terms. True, it is not absolutely necessary for the indictment to charge the offence in the precise language of the statute, still the substance of the statutory definition of the offence must be contained in the indictment and that by no remote or doubtful inference.

The indictment in the present instance, charges the defendant with having *falsely, wickedly, wilfully and corruptly sworn* to matters which were inaccurate and false to the knowledge of the said defendant. Now it would be somewhat hazardous to say that this charge coincides, even in substance with the definition of the offence as laid down in the statute.

But without dwelling longer upon the form, we will proceed to the substance of the indictment. We do not think the act of 1825, reaches this case. The bankrupt law, so far as this case is concerned, seems to be complete in itself, and prescribes its own penalties for violations of its provisions. The first section of that act provides for filing the petition and schedule verified by the oath of the bankrupt, according to the forms prescribed in the present case. The fourth section declares " that if any such bankrupt shall be guilty of any fraud or wilful concealment of his property or rights of property ; or shall have preferred any of his creditors contrary to the provisions of this act ; or shall wilfully omit or refuse to comply with any orders or directions of such court, or to conform to any other requisites of this act, or shall in the proceedings under this act, admit a false or fictitious debt against his estate, he shall not be entitled to any such discharge or certificate." Now the first section of the act requires the bankrupt to set forth under oath, a list of his creditors, and also a schedule of his own property, rights and credits, so that he cannot be " guilty of any fraud or wilful concealment of his property or rights of property," nor can he " admit a false or fictitious debt against his estate," without being guilty of a false statement equally as palpable as that for which the defendant in the present case was indicted, still the only consequence of such an act as fixed by the statute is, that the bankrupt in such case shall not be entitled to his discharge. But the same section goes on to provide that such bankrupt shall at all times be subject to examination orally or upon written interrogatories, " *and if in any such examination he shall wilfully and corruptly answer or swear, or affirm falsely, he shall be deemed guilty of perjury and shall be punishable therefor, in like manner as the crime of perjury is now punishable by the laws of the United States.*"

From all this it appears, that the statute requires the petition and schedule to be sworn to; that for any fraud or wilful concealment of of property (the real offence charged in this case) he is to be prevented from obtaining his discharge; that he may further be called upon to answer categorically to interrogations, and if upon such interrogatories he shall answer falsely, he shall be punished as a felon.

The statute in these particulars follows the rule of reason. The petitioner, from mere inadvertance, and without any fraudulent intent, may omit to state some of his property rights and credits. This would certainly not be criminal, yet circumstances might very possibly be such as to induce a jury to find fraud and an intentional mis-statement where none in fact existed. In such a case the applicant would fail to obtain his discharge. It would be his misfortune and nothing more.

But the humanity of the law, though it does not attempt to prevent all *misfortunes*, protects by an additional barrier from the conviction or imputation of *crime*. Before it will consign the petitioning bankrupt to the penitentiary and render his name forever infamous, it requires that an opportunity should be given him for reflection, and that his attention should be directed to particular points by distinct and direct interrogatories, and if, when thus admonished and interrogated, he perseveres in his false statements, they may justly be presumed wilful, and punished accordingly, but nothing can be gathered from the bankrupt act to show that Congress intended such extreme punishment to be inflicted for mere errors in the original schedule, although circumstances might induce the belief that such errors were intentional.

In addition to what has already been adverted to, the bankrupt act, in its seventh section, after providing for the evidence of witnesses to be used in the proceedings there directed, declares that " if any person shall falsely and corruptly answer, swear or affirm in any hearing or upon any trial of any matter, or in any proceeding in such court in bankruptcy or before any commissioner, he shall be deemed guilty of perjury &c."

It appears to us therefore, that it was the intention of the bankrupt act to be complete in itself, so far as it relates to cases like the present, and not to fall back for a sanction upon the law of 1825.

It is asked in the argument, why was the petition and schedule required to be sworn to if false swearing was not to be punished as a crime. The same enquiry might be applied to official oaths and many others, none of which will be supposed to render the affiant liable to punishment for perjury. In all these cases it is doubtless the object of

the legislature to throw a moral sanction around the transaction, and such was probably the case in the requirement of the bankrupt act we have been considering. At all events men ought not to be sent to the penitentiary merely on the strength of such an argument.

With at least equal reason it may be asked why Congress should, in the bankrupt act itself, have provided punishment for false swearing in certain of the proceedings under that act, if it was their intention that all these offences should be punishable by the act of 1825. Penal statutes should leave nothing in doubt. No man should be punished unless in accordance with the clear intention of the law. Where a statute, after enumerating certain offences declares that a portion of them shall be punishable as perjury, the fair presumption is that the others were not intended to be so punished. The inclusion of one portion, is the exclusion of the other, and as the intention of the bankrupt act itself, (the latest statute) is the only thing we are to regard in the decision of this case, we feel satisfied that the offence charged in the indictment, is not punishable as perjury.

Judgment affirmed.